F2JUMATS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA

4         v.                          06 CR 150(JSR)

5  MICHAEL MATERASSO,

6              Defendant.

7  ------------------------------x

8                                     New York, N.Y.
                                       February 19, 2015
9                                     4:10 p.m.

10

11  Before:

12                    JED S. RAKOFF

13
                                       District Judge
14

15                   APPEARANCES

16  PREET BHARARA
        United States Attorney for the
17      Southern District of New York
    BY:  ANDREW D. BEATY
18       DANIEL B. TEHRANI
         Assistant United States Attorneys
19
    SEWARD KISSEL
20      Attorneys for Defendant
    BY:  RITA GLAVIN
21

22  ALSO PRESENT
        George Olivares, Probation Officer
23      Brian Maloney
        Bailey Smith
24

25

F2JUMATS

1          THE DEPUTY CLERK:  This is February 19, 2015, United

2    States v. Michael Materasso, docket number 06 CR 150.

3          Will everyone please be seated, and will the parties

4    please identify themselves for the record.

5          MR. BEATY:  Good afternoon, your Honor.

6          Andrew Beaty and Daniel Tehrani for the government.

7          We are joined at counsel table by Probation Officer

8    George Olivares.

9          THE COURT:  Good afternoon.

10          MS. GLAVIN:  Good afternoon, your Honor.

11          Rita Glavin.

12          I am here with my client, Michael Materasso.

13          With me at counsel table are two assistants from my

14    law firm, Brian Maloney and Bailey Smith.

15          THE COURT:  Good afternoon.

16          We are here for sentence on specification 4.  Just so

17    that the record is clear, specifications 2 and 3 were

18    previously dismissed.  Specification 1, following an

19    evidentiary hearing, was found by the Court not to have been

20    proven and I issued my findings of fact and conclusions of law

21    in that respect.

22          With respect also, I received a joint telephone call

23    from counsel for the parties yesterday informing me that the

24    defendant has been indicted by the Manhattan District

25    Attorney's office on domestic violence charges.  I want to make

1    it clear that that will play no role whatsoever in this

2    sentence:

3         Number 1.  It is just an accusation.

4         Number 2.  I haven't seen it, I don't believe the

5    parties have seen the indictment, so we don't even know

6    precisely what it relates to.

7         Number 3.  To the extent it relates to the same

8    activity as specification number 1, I have made my

9    determination on specification 1, so it will be irrelevant.

10        The parties raised it with the Court simply because of

11   some discovery issues relating to state court which they are in

12   the process of partly resolving consensually and partly

13   briefing before this Court.

14        Against that background, let me hear, first, from

15   defense counsel and then from government counsel and then from

16   the defendant if he wishes to be heard.

17        MS. GLAVIN:  Your Honor, the defense is asking for

18   time served and that Mr. Materasso's supervised release be

19   terminated.

20        He's been in with respect to specification 4 for three

21   months, if we count the time he served in the state -- for

22   three months and one week -- he has been in since November 12.

23        This particular incident, all four specifications came

24   to light because of a domestic dispute at the home.  He and his

25   wife were not getting along and he, Mr. Materasso, is going to

4

F2JUMATS

1  have to deal with that when he gets out.  What he is focusing

2  on now is dealing with the drug issue.  He relapsed during the

3  midst of this family crisis and he also admitted to your Honor

4  on the stand having used a couple of times since he got out in

5  July.

6           THE COURT:  I am not going to take account of what he

7  admitted on the stand, but the problem you have -- and I might

8  as well flag it for you, although you have probably intuited

9  it -- is his long history of violations.  I actually am not

10 sure I ever had a defendant who has so repeatedly violated the

11 terms of supervised release as this defendant.

12          Back in 2010, he admitted to three violations and I at

13 that time simply sentenced him to a new term of supervised

14 release.

15          Then in 2011, he was found guilty of four

16 violations -- 1, 2 and 3 through an evidentiary hearing and the

17 fourth one he admitted.  Those were very serious violations and

18 so I sentenced him to 24 months' imprisonment.  Those included

19 felony possession of a firearm, possession of drug

20 paraphernalia, possession of drugs of hydrocodone and codeine,

21 etc.

22          Then in 2013, he was found guilty of two more

23 specifications -- failure to report for drug testing and use of

24 methamphetamine -- and I sentenced him to time served plus

25 three years' supervised release.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1          Now we have in 2014 still another violation.

2          So we have, since this defendant went on supervised

3    release, violations in 2010, violations in 2011, violations in

4    2013, and a violation in 2014.

5          Why doesn't that history cry out for a serious

6    sentence here, a serious sentence of imprisonment?

7          I totally agree with you that we should, after

8    whatever prison term is imposed, terminate supervised release

9    because I have given up totally on Mr. Materasso to a degree

10   that I think I have never given up on any other defendant

11   before.

12         He is a man of intelligence.  He is more than

13   intelligent -- he is clever, resourceful.  He comes from lovely

14   parents.  He has everything one could wish in the capabilities

15   of turning his life around and he refuses to do so in a hundred

16   different ways.  His attitude is centered on one thing only,

17   and that is his mistaken view of what will gain him short-term

18   benefits.  So I have no sympathy for Mr. Materasso.  No

19   rational judge would have any sympathy for Mr. Materasso at

20   this stage.

21         Please continue.

22         MS. GLAVIN:  Your Honor, his justification, he

23   relapsed and he used drugs.  He was originally sentenced by

24   your Honor to 30 months' imprisonment.  Since he has been on

25   supervised release, there is no doubt that he has repeatedly

1　violated.  This one, on the scale of violations, yeah, he used;

2　he is a drug addict and it is a problem he is likely going to

3　have when he gets out.  Do I have hopes that he is not going to

4　use again?

5　　　　THE COURT:  No.  I don't think that he is a drug

6　addict in the sense of someone that has a compulsion.  He can

7　turn it on and turn it off.  You yourself brought out through

8　his testimony the long periods when he was not using drugs.  So

9　there's an element of voluntariness here.  He gets in a

10　stressful situation.  He is mad at his wife, although she had,

11　as he himself frankly admitted, had more than good reason to be

12　mad at him and decides, oh, well, to hell with the orders of

13　the Court, to hell with the people at probation who have been

14　trying over these many years to help me, to hell with

15　everything but my short-term desire, so I will revert to meth

16　today and lie about it.

17　　　　This is not an addict in the sense of someone who is

18　struggling to overcome a compulsive addiction.  This is a man

19　whose short-term views outweigh any long-term views.  And I

20　worry, with the two parents that I have seen in this court, for

21　his poor children when neither parent seems to be capable of

22　exercising foresight.

23　　　　Go ahead.

24　　　　MS. GLAVIN:  Your Honor, I don't think Mr. Materasso

25　is going to disagree with anything that you have to say when he

F2JUMATS

1   has a chance to address the Court, but he was in for 30 months

2   in his original sentence.  He has been on supervised release

3   now for, I think, six years perhaps.  And of that supervised

4   release, I think he served almost the same amount of time in

5   prison as his original sentence, if not more.

6        Mr. Materasso, this time around, he used.  He is very,

7   very smart.  This has been sort of one of the things that has

8   been astonishing to me in his representation is how incredibly

9   smart he is.

10       He is very well supported.  His employer thinks very

11  highly of him, as Mr. Olivares knows.  And he knows he has to

12  serve time.  But this incident is about him going and using

13  drugs and, yes, your Honor, if it is to heck with what the

14  Court has to say and to heck with what Judge Rakoff has to

15  say -- and, believe me, he knows the consequences for that --

16  but if it is to say heck with that, how much time are you going

17  to put him in jail that is going to make a difference at this

18  point for even deterrence effect?

19       What Michael just went through with his evidentiary

20  hearing with his wife and what he is about to go through with

21  the Manhattan District Attorney's office is amongst the most

22  gut-wrenching things he has had to go through because, in this

23  period of incarceration, he has not been able to see his

24  children.  His wife, although she keeps repeatedly contacting

25  him while he is in jail, he cannot contact her back because

1  then he would be violating his order of protection that she

2  automatically got in November when she made the complaint.

3        So he is sort of a man who has not just had to pay the

4  price with your Honor, but the collateral consequences of this

5  last term because of his wife -- and I will say it here, I have

6  said it here and I will say it to the Manhattan District

7  Attorney's office -- his wife is completely fabricating

8  domestic violence.  They used to have arguments.  He didn't lay

9  a hand on her.  He didn't choke her.  And if he did, God help

10  him because Irma Materasso is a very vindictive woman who will

11  stop at nothing.  He has to go back and deal with that.  He has

12  already had to deal with three months in jail because of her.

13        His drug use, yeah, he got lucky.  He did use when he

14  got out.  Didn't use again.  And then when his wife moved out

15  and everybody went to the shelter, yeah, woe is me and he used.

16        THE COURT:  When you talk about -- and this, I think,

17  is really largely irrelevant but just because you have raised

18  it -- his wife's limitations and deficiencies, what happened,

19  though, by his own admission, was he cheated on her, he lied to

20  her about it and then she took the children and went to a

21  shelter.  I don't see how that could be transmuted into her

22  doing something evil to him.

23        MS. GLAVIN:  Well, your Honor, we were not allowed to

24  put on evidence because she didn't testify, but Irma Materasso

25  has been running a prostitution ring the entire time he has

F2JUMATS

1   been in --

2           THE COURT:  That may or may not be true.  I don't know

3   that one way or another, but my point is, just going on what we

4   do know -- and I'm not here to argue about Mrs. Materasso, I am

5   concerned with Mr. Materasso, but you were making the argument

6   that he has been subjected to all of these terrible things by

7   her.  All I know, and the one and only thing that was before

8   me, other than the abuse, and I found for you on the abuse and

9   found the government had not proven that, but what was

10  unquestionable was that he lied to her about his sexual

11  escapades -- may be overstating it -- and she has, as one might

12  well expect -- got mad and took the children away to a shelter.

13  That much is, I think, uncontested, yes?

14          MS. GLAVIN:  Uncontested but, your Honor, I would

15  suggest to you that the situation is much more complicated --

16          THE COURT:  I think that is almost certainly the case.

17  I think it is -- as I think I may have indicated at the time of

18  the hearing -- not a marriage made in heaven, but it really is

19  largely irrelevant to our discussion here today.

20          MS. GLAVIN:  I raise it in the sense that he is most

21  definitely in a volatile marriage.  I think the two of them

22  have lied to each other about a lot of things.  And as your

23  Honor described, what happened that particular week or that

24  three-day period which came out undisputed at the hearing, he

25  did what he did and he admitted it.  And she did what she did,

1   but that wasn't part of the hearing.

2            I am just suggesting that the collateral consequences

3   to him over the last three months, where since he has been out

4   in July, he has been living with a wife who, unbeknownst to

5   him, was repeatedly texting his probation officer saying that

6   he was using drugs when he wasn't even using drugs, went so far

7   as to send a phony email to the probation officer claiming to

8   be a co-worker of him to get him fired from his job, saying

9   that he is using, he is coming in high and there is going to be

10  an innocent labor worker that is killed because of him --

11  things that just were not true.  She then went so far as to

12  write your Honor about this.  During the supervised release

13  period, this is all happening unbeknownst to him and he is

14  wondering why he gets called into probation.

15           And there is this side relationship going with his

16  wife and the probation officer, and it has not just been Mr.

17  Olivares, it's been the prior probation officers.  There has

18  been this really strange triangular relationship since he has

19  been on supervision where his wife, whenever she is unhappy,

20  there is some type of letter to probation or saying to

21  probation he did something -- whether he did it or not and then

22  he somehow ends up here, but she is in the center of a lot of

23  this.

24           He is not a perfect guy and there was definitely a woe

25  is me, I'm sorry for myself, I don't care what everyone thinks,

11

F2JUMATS

1  and he went and used drugs and the ramifications are suffered

2  by his family.

3          But what has happened now is that his wife has the

4  three kids -- or two kids.  She has had no contact with the

5  family since your Honor's decision came out, she just stopped

6  texting.  We think we know where she is, but she has moved out

7  of the apartment that they shared on the Upper East, Midtown

8  East.  We think she is in New Jersey.  I think her mother has

9  gone back to Holland.

10          He has to put his life back together.  He still has a

11  job, we think  -- which was a very good job and he was good at

12  it; if he gets out, he would like to do that because he can

13  support his kids and he was supporting his kids and his wife.

14  He was making, with the union job, $5,000 a week or every two

15  weeks which was a really good paying job and there were very

16  long hours and he was doing the job, and he was getting there

17  first thing in the morning.

18          In terms of whether you give him a chance or don't

19  give him a chance, I think it just gets to the point, Judge,

20  where it is just diminishing returns.  For the amount of time

21  he spent in jail, and if you weigh it against all of the other

22  people that you see sentenced in this courthouse every day, he

23  is not on some running crime spree while he has been out on

24  supervised release, but he is serving time and time and time.

25  And I am not going to do a lot on the insider trading thing,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    but I look at all of these guys that do insider trading for

2    years and don't do a day.

3            Michael has been in repeatedly on supervised release

4    just for using drugs, and I am willing to bet that some of

5    those guys that get out on insider trading and are cooperating

6    may perhaps have used drugs during the course of their

7    supervised release but --

8            THE COURT:  Ms. Glavin, I really think you are

9    reaching --

10           MS. GLAVIN:  Putting that aside --

11           THE COURT:  -- and if I didn't have such overwhelming

12   respect for your legal abilities, I would say you are desperate

13   in the argument that you are now making.

14           MS. GLAVIN:  I really feel that he has not been this

15   one-man crime spree since he got out in July.  If he had been,

16   I could see your Honor slamming him, but he used and he cheated

17   on his wife and the consequences for that has been devastating.

18           When he came in here the first time before your Honor

19   on the 18th, he took responsibility immediately for what he

20   did.  He already admitted it to the probation officer, but he

21   pled guilty and he wasn't going to waste anybody's time.

22           On specifications 1 through 3, he wasn't going to lie,

23   and he wasn't going to say that he did something that he didn't

24   do.

25           THE COURT:  Again, I think we getting far -- first of

1    all, in connection with previous specifications, I have found

2    that he had lied.  Secondly, in his testimony here in the

3    hearing we just had, there were certainly portions of the

4    testimony that were inconsistent.  I didn't have to reach any

5    of that in my decision, but if I had to reach it, I think he

6    was not perhaps the model candidate you are suggesting now.

7         MS. GLAVIN:  No.  I think this goes back to my central

8    point, he is not a one-man crime spree since he has been out in

9    July.

10        To the extent he may have colored things in a way to

11   his benefit during his testimony -- as I think a lot of

12   defendants do when they take the stand -- he was coloring it,

13   if he was, on the small stuff.

14        If he gets out, he is going to back into -- he had

15   already been doing narcotics on his own.  He does have a family

16   to go back to.  I think a lot of stuff has come out as a result

17   of this last time.  It is clear, I think, that there are very

18   serious underlying family issues and that he is going to have

19   to deal with immediately and go to family court.

20        And, your Honor, I just say let him go deal with that.

21   He may lose his two kids because of this whole situation.  We

22   are going to have to go through this again in state court.  He

23   is not able to see his kids -- I am not sure how long this

24   temporary order is.

25        (Discussion off the record between defendant and

 1  counsel)

 2      MS. GLAVIN:  The temporary restraining order that she

 3  got with the complaint, he can't see his wife and kids until

 4  May.  And if he does anything, he knows she is unhappy with

 5  him, she is going to report it and then we are just going to go

 6  on with the cycle.

 7      My view on this is, let him go today.  He has enough

 8  to deal with.  There has been so much collateral consequences

 9  and so much pain.  This was an intensely personal specification

10  proceeding that I think was horrible for everybody involved,

11  and I just want to say put it to bed.

12      He spent more time in jail than he was originally

13  sentenced to.  He spent more time in jail on supervised release

14  than he sent on supervised release.  The message has been sent.

15  Your Honor has sent a very powerful message as your Honor has

16  done since 2010 when the violations started happening.  There

17  is no specific deterrence effect at this point, it is just

18  going to end this continuing bad cycle, I think.  But I think

19  it is going to be more important for Michael.

20      His sister Jodi is here today and his mom Donna and

21  his father Michael Sr.

22      THE COURT:  Yes.  One of the very few positive things

23  that have come out of this otherwise unpleasant series of

24  proceedings is, I have had a chance to observe in the case of

25  the mother, hear her testify -- his parents are lovely.  I

 1  think his sister probably is as well.  While I have no sympathy

 2  for Mr. Materasso, I have tremendous sympathy for them, the

 3  pain they must have been going through day after day, year

 4  after year and always remaining supportive.  It was very

 5  interesting to see the exchange of emails between Mrs.

 6  Materasso's mother and Mr. Materasso's mother.  And in the

 7  Court's view, while they were both supportive of their

 8  children, as mother's should be, there was a cerity to Mr.

 9  Materasso's mother that was perhaps lacking from

10  Mrs. Materasso's mother.

11          Let's hear from the government.

12          MS. GLAVIN:  There was one other point that I wanted

13  to make.

14          Since he has been in, he has had a stellar record over

15  at the MCC.  Actually, when I go to see him, the guards know

16  him.  He is liked over there.  He has been absolutely no

17  problem.

18          THE COURT:  Is this an argument why I should sentence

19  him to the MCC?

20          MS. GLAVIN:  No.  It is not as though he is reverted

21  into, woe is me, over there.  He has been productive while he

22  has been over there.  His attitude, I think, has been positive

23  in the face of what seem like insurmountable obstacles that

24  were going to happen.  I just wanted to point that out to the

25  Court.

F2JUMATS

1          THE COURT:  Thank you.

2          Let me hear from the government.

3          MR. BEATY:  Just very briefly because I think that you

4     have a better sense than I do of the history of this case and

5     the history of this defendant, the government thinks that a

6     sentence at the high end of the guideline range of three to

7     nine months is appropriate.  Probation has requested a sentence

8     of nine months and the government agrees.

9          THE COURT:  The problem I always have is the

10    theoretical problem, where are they getting the nine months?

11    Where is the sentencing commission getting the nine months?

12    They are pulling it out of thin air.  In fact, if I wanted to

13    impose a greater than nine-month sentence on Mr. Materasso, I

14    could point to the absurdity that the guidelines gives him the

15    criminal history category of I, no matter how many violations

16    of supervised release are committed.  You would think that the

17    guidelines, if they were remotely rational -- a hypothesis that

18    I find repeatedly contradicted -- would say that the guideline

19    range ought to go up, if it is the second offense, a third

20    offense, a fourth offense.

21         So he is going to get more than time served, I

22    believe.  I still want to hear from him before I make any final

23    decisions, but I don't look to the guidelines as much of a

24    guide in determining what is the right sentence.

25         MR. BEATY:  Understood, your Honor.  I will say, the

last time that he was in for a violation of supervised release,

the Court gave him six months.  It is clear that was not

enough; within a week of coming out, he was using drugs

again --

THE COURT:  Here is the point that your adversary is

making.  She essentially said, imprisonment has not worked as a

deterrence in this case, whatever his motivations, whatever

complexities lead him to this behavior, there doesn't seem to

have been much deterrent value in the Court's previous terms of

imprisonment.

Now, of course, I could give him a five-year sentence

and that would have not a deterrent effect, but certainly an

incapacitation effect, but specification 4 is not that major a

violation, it is really the context of all of the prior

violations that make it more serious, if you will.

So it seems to me, subject to hearing from you further

and from Mr. Materasso that this is the rare case where the

sentence the Court should fashion should be largely a function

of asserting the importance of the Court's orders, of

compliance with the probation department's directives; it

really has less to do with Mr. Materasso.  It is not divorced,

of course, from the specifics of his case, but in the context

of his history, it is more of a question of what is fair and

just when a man keeps violating and violating his supervised

release, what message, in the sense of -- I don't even like the

word "general deterrence" because it is partly that, but it is more a question of just simply saying, you can't continue to do this.

The Court and the probation department of this court will not allow that to happen. And I do view the probation office as, in very many different respects, the victim in this case because they have struggled with this gentleman. And if their efforts are not vindicated through a meaningful sentence, I believe they will be let down and their effectiveness undercut. So it is those broader determinations, it seems to me, to be not the only thing I have to consider, all of the factors.

MR. BEATY: We agree, your Honor. To accept the defense's argument would reward the defendant for violating over and over and over. I think a substantial sentence is warranted to promote respect for the Court's order and for the law, for the probation department and, as you say, both as deterrence for Mr. Materasso and for others on supervised release.

THE COURT: Thank you.

I am going to hear from Mr. Materasso.

THE DEFENDANT: Thank you, your Honor, for giving me a chance to speak.

Your Honor, first, I would like to thank you for affording my right to a hearing. And I apologize to you, to

1    Court for the time it took up.  My objective was not to waste

2    the valuable time of the Court.

3        THE COURT:  You were entitled to a hearing and you

4    were vindicated in that hearing with respect to this

5    specification.

6        THE DEFENDANT:  Your Honor, I would like to apologize

7    to my family and thank them for all of the support that they

8    have given me and I have let them down time and time again.

9        I would like to thank my attorneys for the hard work

10   they have done for me.  They have gone beyond for me.

11       Your Honor, I have to respectfully disagree with you

12   saying I am not a drug addict.  I have dealt with the disease

13   of addiction for over 11 years and I use drugs every single day

14   in large amounts.  I am lucky to still be here.

15       What your Honor doesn't know is that I started my

16   probation -- I was not afforded the drug program, as your Honor

17   had ordered -- not to slander Mr. Olivares.  It was not his

18   fault.  I took it upon myself to put myself in an NA program.

19   I had to sponsor a home group.  I did it every single day in

20   order to stay off drugs -- every single day I used drugs.  It

21   wasn't that I just decided to go use.

22       On the outside world, the disease of addiction -- it

23   is categorized as a disease -- I am well aware that this

24   disease is chronic, and there is no way around it.

25       If I had one wish in the world, it would not be for

F2JUMATS

1    all of the money in the world; it would be to not be an addict.

2    This has brought me to my knees.

3         Many times I have assured my father.  My father has

4    stage 4 cancer and I am in jail.

5         I wish you could see me on the outside, your Honor.  I

6    work 12 to 15 hours a day, seven days a week.  I paid for a

7    $5,000-a-month apartment, $2,000 a month for my daughter's

8    preschool.  My daughter has been pulled from preschool now that

9    I'm not there.

10        I am not a bad man, your Honor.  I was not selling

11   drugs.  I lived in the UN building.  I  was approved by the

12   board.  People respect me.  I struggle with addiction, hands

13   down.  I don't agree with saying that I just use it once in a

14   while.  I respectfully disagree.

15        I had a pretty good relationship with Mr. Olivares.  I

16   had no idea what my wife was going through -- I maybe said on

17   the stand that I used because of my wife.  I have been using

18   drugs whether I was sad, whether I was happy.  I used drugs my

19   entire life.  I don't blame my wife for using drugs.  I have

20   two little babies, your Honor, and I truly just want to get

21   home to provide for them.

22        My wife has never worked in her life.  What she would

23   have to do in order to support my kids, I can only imagine.  I

24   am a good father, your Honor, my children miss me.

25        And I know that you have given up on me.  Tell you the

F2JUMATS

1    truth, I feel like I have given up on myself.  I want to get

2    help.  I want this drug addiction to be over.  I work all day

3    long.  I went to an NA meeting every single day.  I relapsed.

4    They told me to put yourself in a 30-day program.

5         Your Honor, I had six probation officers.  All six

6    probation officers reminded me that your Honor is my judge,

7    that there is no three-strike rule in the probation department

8    and any violation will be punished and a 90 percent chance you

9    can go to jail.

10         And I apologize for lying to Mr. Olivares.  And I

11    didn't see if I could ask for a program that I knew I could

12    have gone back to jail.  I apologize for lying.  I apologize

13    for you giving up hope on me.

14         Thank you very much for listening.

15         THE COURT:  It is interesting to hear Mr. Materasso

16    speak.  Part of me says that he can be very manipulative and he

17    knows the right sounds to make, so to speak.  But part of me

18    actually has to give some weight to what he just said because I

19    think that while he may not be addicted now and during the time

20    of this offense in the way that he was years earlier that he

21    has just described, that doesn't mean that he was free of

22    addiction.

23         The neuroscience of this, which is still developing

24    but is interesting, essentially, casts doubt on many of the

25    drug programs that our own probation office uses because, what

1    is going on, according to these studies in addiction, is that

2    when you have the release of dopamine that occurs in the early

3    stages of the uses of these various drugs and gives rise to all

4    sorts of positive effects in terms of mood.  It creates

5    long-term memories that don't disappear in five or ten years,

6    let alone in six months, and that can be triggered by the

7    appropriate cues.  And once triggered, make it very difficult

8    to resist use of whatever is the drug of choice.

9              So there is a certain backing for what Mr. Materasso

10   just said in the admittedly not well developed but interesting

11   neuroscience.

12             For reasons I have already indicated, I am not going

13   to give the time served sentence.  I have already said why and

14   I won't repeat all of that other than to say that there is a

15   fundamental vindication of not just the authority of this

16   Court, but the authority of the probation office that is very

17   important to this Court that prohibits a sentence of only three

18   months which would be, at most, that will be given credit for

19   state time and so forth.

20             On the other hand, I am rethinking a little bit.  I

21   came in here, and my initial feeling was to give the nine-month

22   sentence.  The only thing that stuck in my craw would be, that

23   would be the sentence recommended by the guidelines and that

24   certainly goes against my modus operandi.  But I think there is

25   something to what Mr. Materasso says.  So the sentence of the

F2JUMATS

1  Court is that the defendant is sentenced to six months on

2  specification 4. We have already previously revoked his

3  previous term of supervised release. No further term of

4  supervised release will be imposed.

5           Mr. Materasso commits new crimes, in some ways, he is

6  going to face worst punishment because he will not be under the

7  supervised release regime that he will be sentenced to, will be

8  under the substantive crime where the penalties are typically

9  much higher. So, while I frankly admit that Mr. Materasso's

10  statement did touch a bit of renewed sympathy for him in the

11  Court's mind, I am still not very optimistic about his future.

12  Maybe I am wrong -- I pray that I am wrong. In any event,

13  there will be no further term of supervised release and the

14  sentence will be six months.

15           Before I advise the defendant of his right of appeal,

16  is there anything else that any counsel -- anything from the

17  government?

18           MR. BEATY: No, your Honor.

19           THE COURT: Anything from the defense?

20           MS. GLAVIN: Your Honor, just with respect to the time

21  that he has been in, we would just ask your Honor credit that

22  in terms of the sentence being imposed. He was in for months

23  in state custody.

24           THE COURT: No. I am going to do it in the normal

25  federal way. Federal custody will be the only way counted.

F2JUMATS

1          Mr. Materasso, you have the right to appeal the

2     sentence.  Do you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  If you cannot afford counsel for the

5     appeal.  Ms. Glavin, of course, has undertaken to make you her

6     lifetime work, so she will be glad to represent you on appeal.

7          Anything else?

8          You understand that the Court will appoint counsel for

9     you free of charge?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Very good.

12

13                         o    0    o

14

15

16

17

18

19

20

21

22

23

24

25